# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| RAMIRO AND NORMA A. GUERRA | § | |
| | § | |
| | § | |
| VS. | § | CASE NO. _____ |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Ramiro and Norma A. Guerra (hereinafter called "Plaintiffs") complain of and about Defendant Allstate Vehicle and Property Insurance Company (hereinafter called "Defendant"), and for cause of action shows unto the Court the following:

### PARTIES

1. Ramiro Guerra is an individual who is a citizen of Texas.

2. Norma A. Guerra is an individual who is a citizen of Texas.

3. Defendant Allstate Vehicle and Property Insurance Company (sometimes referred to herein as "Allstate") is an unincorporated insurance association whose underwriters are all citizens of states other than Texas.

### JURISDICTION

4. Pursuant to 28 U.S.C. §1332, this Court has diversity jurisdiction because the parties are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

### VENUE

5. Venue is also proper in this judicial district and division pursuant to 28 U.S.C. §1391(b)(2) because Plaintiffs' insured real property made the basis of this suit is situated in this

district and division, and all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and division.

## FACTS

6. Plaintiffs are the owners of a Texas Homeowners' Insurance Policy (hereinafter referred to as "the Policy"), which was issued by Allstate Vehicle and Property Insurance Company.

7. Allstate Vehicle and Property Insurance Company is in the business of providing insurance in the State of Texas. The insurance done by Allstate in Texas includes, but is not limited to the following:

   a. The making and issuing of contracts of insurance with the Plaintiffs;

   b. The taking or receiving of application for insurance, including the Plaintiffs' application for insurance;

   c. The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiffs;

   d. The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiffs;

   e. The adjusting and inspection of Plaintiffs' insurance claims;

   f. Making insurance coverage decisions;

   g. Taking part in making insurance coverage decisions; and

   h. Making representations to Plaintiffs as being an agent for an insurance company with authority to make coverage decisions.

8.Plaintiffs own the insured property, which is specifically located at 2613 Lake Shore Drive, Edinburg, Texas 78539, in Hidalgo County (hereinafter referred to as "the Property").

9.On or about June 22, 2018, a storm struck Hidalgo County, Texas, causing damages to homes and businesses throughout the area, including Plaintiffs' property ("the Storm"). Specifically, Plaintiffs' roof sustained extensive damage during the Storm. Plaintiffs' property also sustained damages to the architectural finishes of the property. After the Storm and in compliance with the Policy, Plaintiffs filed a claim with Allstate for the damages to their property caused by the Storm.

10.Plaintiffs submitted a claim to Allstate against the Policy for roof damage, exterior damage, and significant interior damage caused by the Storm. Plaintiffs asked that Defendant cover the costs of repairs to the property pursuant to the Policy.

11.On or about July 16, 2018, Plaintiffs sent Defendant a demand letter for damages to their home, in the amount of $224,311.36, which included interests and attorneys' fees. Of that amount, $217,674.11 represent the economic damages found by the estimator on behalf of Plaintiffs.

12.After submitting the claim, Defendant assigned an adjuster to evaluate damages to the Property. At the start of the process, Defendant's adjuster told Plaintiffs that the damage to their property would be fully covered and that Plaintiffs had nothing to worry about. Defendant's adjuster knew this was a false statement when made because, prior to inspecting the home, adjuster knew that Defendant would not pay any amount for the covered damage. Defendant trains its adjusters to ignore covered damage and/or (depending on the circumstances) to calculate damages so that the total estimated cost of repairs is below a policyholder's deductible. Thus, Defendant's

adjuster's statement that Plaintiffs' damage to their property would be fully covered was false when made, completely aware that it was false.

13. The adjuster assigned by Defendant failed to reasonably perform an investigation into the damages sustained by the Plaintiffs. Specifically, the adjuster spent less than one hour in assessing damages to the property, and then determined there was no storm-related damage to Plaintiffs' property; thus, no payment was issued. Much more time would have been needed to conduct an adequate inspection due to the size of Plaintiffs' property and the extent of the damages Plaintiffs identified. Much more time would have been needed to conduct an adequate inspection due to the size of Plaintiffs' home and the extent of the damage Plaintiffs identified. Plaintiffs identified 21 areas in their home with damage caused by storm-created openings, which is damage covered by their homeowners' insurance policy. Those areas include the roof, the entry/foyer, 4 hallways, the living room, the game room, the kitchen, the dining room, the master bedroom, the master bath, 2 master closets, which includes a sub-room, 3 bedrooms, 2 bathrooms, a loft, and the office. The roof has damaged, split, and cracked wood shakes resulting from the water damage due to storm-created openings, which is damaged covered by Plaintiffs' homeowners' policy. Similarly, Plaintiffs identified covered damage to the entry/foyer, specifically water stains and swelling on the ceiling due to storm-created openings, which is damage covered by Plaintiffs' homeowners' policy. Plaintiffs also identified damage in the form of large water stains and peeled paint on the ceiling and substantial swelling on the ceiling and walls of the 4 hallways, the living room, the game room, the kitchen, the dining room, the master bedroom, the master bath, 2 master closets, which includes a sub-room, 3 bedrooms, 2 bathrooms, a loft, and the office, which is damaged covered by Plaintiffs' homeowners' policy. In sum, Defendant's adjuster ignored all of these aforementioned areas by refusing to conduct an adequate inspection. Defendant's adjuster

further failed to inspect these areas because Defendant trains its adjusters to conduct outcome-oriented inspections and in an expeditious fashion.

14. Plaintiffs clearly identified damage on the roof, which itself is 40 squares. The inspection was done in an outcome-oriented way and in an expeditious fashion, as well. The size of the roof would have necessitated over one and a half hours to do a proper and thorough inspection. Defendant's adjuster spent less than 30 minutes inspecting the roof and ignored several affected areas due to the storm winds, which are damages covered by Plaintiffs' homeowners' policy.

15. As a result of Defendant's unreasonable investigation, Plaintiffs' claim was improperly adjusted. Defendant's calculation of the covered damage was significantly deficient, as Defendant purposefully ignored areas with covered damage. Because Defendant's adjuster failed to properly inspect and account for the covered losses, Defendant made no payment at all to Plaintiffs for the extensive damage to their property. In fact, Defendant trains adjusters to calculate just enough damage or no damage at all so that the total amount of replacement cost value will be less than a policy holder's deductible, regardless of the actual damage present in the home. Such a policy allows Defendant to mandate that policyholders make repairs to their home out of their own pockets, thereby releasing Defendant of its obligation to make any payment to the policyholders for those repairs.

16. A subsequent estimate of the covered damages, as described earlier, revealed that the estimated repairs for Plaintiffs' home were over $217,000.00, well above Plaintiffs' deductible. The difference in repair estimates is due directly to Defendant purposefully overlooking covered damage to the roof, the 4 hallways, the living room, the game room, the kitchen, the dining room,

the master bedroom, the master bath, 2 master closets, which includes a sub-room, 3 bedrooms, 2 bathrooms, a loft, and the office.

17. As a result of Defendant's conduct, Plaintiffs did not receive the payment they were entitled to under the Policy for their Storm damages and losses. As previously stated, when Plaintiffs originally purchased the Policy issued by Allstate Vehicle and Property Insurance Company, Allstate's agent, Brenda Gomez, represented on behalf of Allstate that it would always conduct a fair and unbiased investigation of Plaintiffs' claims against the Policy and promptly issue payment to Plaintiffs for all properly covered hail storm and windstorm damages to the Property. Ms. Gomez knew this statement was false at the time it was made. Ms. Gomez knew that Allstate conducted outcome-oriented investigations and purposefully calculated damage estimates below a policyholder's deductible, all to ensure that Defendant would not have to pay policyholders for covered damage. Similarly, Defendant also evades responsibility for covered losses by attributing damages to "exclusions" enumerated within that same policy. At no time did Allstate or any of its agents disclose to the Plaintiffs that, in fact, it would conduct an unreasonable, unfair, and/or unbiased investigation of the claims that Plaintiffs submitted against the Policy for hail storm and/or windstorm damages to the Property and thereby deny Plaintiffs' claim for properly covered hail storm and/or windstorm damages to the Property. The failure to disclose this truth was a material omission by Ms. Gomez. As such, Plaintiffs reasonably relied on Allstate's misrepresentations and omissions upon purchasing their initial insurance policy, and but for Allstate's misrepresentations and omissions, Plaintiffs would not have purchased the Policy issued by Allstate and would have purchased an insurance policy from a different insurer to adequately insure the Property against hailstorm and/or windstorm losses.

18. As indicated in the paragraphs above and below, Allstate wrongfully adjusted Plaintiffs' claim for damages suffered during the Storm, even though the Policy expressly provided for those losses. Defendant knew that it had conducted an outcome-oriented investigation and had purposefully ignored covered damage, all the time knowing that it was wrongfully refusing to pay for covered damages. Every day that passes without payment to Plaintiffs for the covered damage is another day in which Defendant is purposefully delaying payment because it knows that Plaintiffs have more covered damages than were initially estimated.

19. Defendant failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, Defendant, through its various agents, wrongfully denied Plaintiffs' claim for covered damages, even though all conditions precedent to recovery upon the Policy had been carried out by the Plaintiffs. Allstate's conduct constitutes breach of the insurance contract between Allstate and Plaintiffs.

20. Defendant failed to make an attempt to settle Plaintiffs' claim in a fair manner when its adjuster failed to perform a reasonable investigation into Plaintiffs' damages. Specifically, the adjuster spent less than one hour in assessing damages and then determined that the damages were not covered by the policy. All this occurred despite Defendant's actual awareness of its liability to the Plaintiffs under the Policy. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(2)(A).

21. Defendant refused to fully compensate the Plaintiffs under the terms of the Policy for covered losses. Specifically, Defendant performed an outcome-oriented investigation of Plaintiffs' claim, purposefully ignored covered damage, and purposefully denied Plaintiffs' claim on the property, all of which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs'

losses on the Property. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(7).

22. When Plaintiffs first purchased the Policy from Defendant through its agent, Defendant misrepresented to Plaintiffs that under the Policy, Plaintiffs would be entitled to payment from Allstate for damages caused by a covered loss, including hail storm and/or windstorm losses, and that it would conduct an unbiased and reasonable investigation of any claim Plaintiffs timely submitted against the Policy. This was a misrepresentation because the agent knew that Defendant would not pay for such damages, as described above. If Plaintiffs had known that Allstate was not going to pay for hailstorm and/or windstorm damages that were covered under the Policy, Plaintiffs would not have purchased the Policy from Allstate, and instead would have purchased a different insurance policy insuring their home from a different insurer. Defendant made material misrepresentations as to coverage under the Policy upon Plaintiffs purchasing of the Policy that in fact misled Plaintiffs, including untrue statements of material facts and wrongfully concealed material facts necessary to make Allstate's other representations also misleading, upon which Plaintiffs reasonably relied to their detriment. Allstate's conduct constitutes a violation of the Texas Insurance Code, Misrepresentation of Insurance Policies. Tex. Ins. Code §§541.061(1), (2), (3), and (5) as well as violations of Texas Deceptive Trade Practices Act("DTPA"), Tex. Bus. & Comm. Code §§17.41-.63.

23. Defendant Allstate failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay by dragging the process of obtaining a decision through months of bitter dispute, when Defendant already knows that Plaintiffs are indeed entitled to coverage under the terms of the policy. Specifically, Defendant has delayed any payment for

Plaintiffs' claim. Allstate's conduct constitutes a violation of Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code§ 542.058.

24. From and after the time Plaintiffs' claim was presented to Defendant, the liability of Allstate to pay the claim in accordance with the Policy has been reasonably clear. However, Allstate has refused to pay Plaintiffs for the claim, despite there being no basis whatsoever on which a reasonable insurance company would have relied upon to deny full payment. Defendant's conduct additionally constitutes a breach of the common law duty of good faith and fair dealing.

25. Defendant knowingly and recklessly made false representations, as described above, regarding the material facts and/or knowingly concealed all or part of material information from the Plaintiffs.

26. As a result of Defendant's conduct, Plaintiffs were forced to retain the professional services of attorneys and law firm to represent them with respect to these causes of action.

## CAUSES OF ACTION

27. Plaintiffs are not making any claims for relief under federal law.

28. Defendant Allstate is liable to Plaintiffs for intentional breach of contract, DTPA violations, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

## BREACH OF CONTRACT

29. Defendant Allstate's conduct constitutes a breach of the insurance contract made between Allstate and Plaintiffs.

30. Defendant's failure and/or refusal to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendant's insurance contract with the Plaintiffs.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
## UNFAIR SETTLEMENT PRACTICES/PROMPT PAYMENT

31.     Defendant Allstate's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §§ 541.060(a), 541.061. All violations under this article are made actionable by Tex. Ins. Code § 541.151.

32.     Defendant's unfair settlement practices, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitute an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(1).

33.     Defendant Allstate's unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of this claim, even though its liability under the Policy was reasonably clear, constitute an unfair method of competition and un unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(2)(A).

34.     Defendant Allstate's unfair settlement practices, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its denial of the claim, constitute an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(3).

35.     Defendant Allstate's unfair settlement practices, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitute an unfair method of competition and unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(7).

36.     Defendant Allstate's unfair or deceptive acts and/or practices of misrepresenting the Policy, as described above and otherwise herein, by: (1) making untrue statements of material

fact, (2) failing to state material facts necessary to make other statements it made also misleading, (3) making a statement(s) in a manner that would mislead a reasonably prudent person to a false conclusion of material fact, and which in fact misled Plaintiffs to false conclusions of material fact regarding coverage under the Policy, and/or (4) failing to make a disclosure as required by law and/or in accordance with another provision of the Insurance Code, constitute an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.061.

37. Defendant Allstate's delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, constitutes a non-prompt payment of this claim. Tex. Ins. Code § 542.058.

## DTPA VIOLATIONS

38. Defendant Allstate's conduct amounts to multiple violations of the DTPA Tex. Bus. & Comm. Code §§17.41-.63. Plaintiffs are "individuals" who sought or acquired goods or services by purchase or lease from Defendant, and therefore qualify as consumers under the DTPA. Tex. Bus. & Comm. Code §17.54(4). Plaintiffs have met all the conditions precedent to bringing this cause of action against Defendant. Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

    a. Defendant's actions, as described in this petition, are unconscionable in that Defendant's actions took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiffs a right to relief under section 17.50(a)(3) of the DTPA.

  b. Defendant's conduct, acts, omissions, and failures, and described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

39. The above-described acts, omissions, and failures of the Defendant are a producing cause of Plaintiffs' damages as described in this petition. The above-described acts, omissions, and failures of the Defendant were committed "knowingly" and "intentionally," as those terms are defined by the Texas Deceptive Trade Practices Act.

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

40. Defendant Allstate's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

41. Defendant Allstate's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### KNOWLEDGE

42. Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiffs' damages described herein.

### DAMAGES

43. Plaintiffs would show that the aforementioned acts, taken together or singularly, constitute the producing cause of the damages sustained by the Plaintiffs.

44. These damages are a direct result of Defendant's mishandling of Plaintiffs' claim, in direct violation of the laws, as set forth above.

45. For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorneys' fees.

46. For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorneys' fees. For knowing conduct of the acts described above, Plaintiffs ask for three times their actual damages. Tex. Ins. Code § 541.152.

47. For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of their claim, as well as ten (10) percent interest per annum on the amount of such damages claimed, together with attorneys' fees.

48. For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

49. For the prosecution of this claim, Plaintiffs have been compelled to engage the services of attorneys, whose names are subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

50. Plaintiffs would further show that the acts and omissions of Defendant and its agents, adjusters, employees and/or representatives complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendant at the expense of Plaintiffs. In order to punish said Defendant

for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiffs request exemplary damages pursuant to 17.50(b)(1) of the Texas Business and Commerce Code and § 541.152(b) of the Tex. Ins. Code.

## JURY DEMAND

51. Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, that all causes of action herein be tried before a jury consisting of citizens residing in Hidalgo County, Texas.

## CONCLUSION AND PRAYER

52. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiffs request the award of attorneys' fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.

Dated: September 5, 2019

                                                      Respectfully submitted,

                                                      /s Omar Ochoa
                                                      Omar Ochoa
                                                      *Attorney-in-Charge*
                                                      S.D. Tex. Bar No. 2081960
                                                      121 N. 10th Street
                                                      McAllen, Texas 78501
                                                      Telephone: (956) 630-3266
                                                      oochoa@omarochoalaw.com

/s Victor Rodriguez

Victor Rodriguez
*Of Counsel*
S.D. Tex. Bar No. 562260
**VICTOR RODRIGUEZ LAW FIRM PC**
121 N. 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
victor@vrodriguezlaw.com